AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

FILED

MAY 2 3 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

Southern DISTRICT OF California

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Priority Mail Parcel #0307-3330-0000-0773-5157 addressed to Cris Edwards 1002 balaye Vista Circle Apt. 304 Tampa Fl. 33619. The parcel has the return address information of Linda Davis 1330 VanHouten Ave. Santee Cal. 90271.

'08 MJ 1611

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER:

I, Kelly E. Cain being duly sworn depose and say:

I am a(n) U. S. Postal Inspector and have reason to believe
Official Title

that on the premises known as (name, description and/or location)

Priority Mail Parcel #0307-3330-0000-0773-5157 addressed to Cris Edwards 1002 balaye Vista Circle Apt. 304 Tampa Fl. 33619. The parcel has the return address information of Linda Davis 1330 VanHouten Ave. Santee Cal. 90271 which is in the custody of the U. S. Postal Inspection Service

in the Southern District of California

there is now concealed property, namely (describe the person or property)

Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.

The facts to support the issuance of a Search Warrant are as follows:

See attached.

Continued on the attached sheet and made a part hereof. X Yes ___No

Kelly E. Cain
Signature of Affiant

Sworn to before me, and subscribed in my presence

MAY 2 2 2008 at San Diego, CA
Date City and State

ANTHONY J. BATTAGLIA
U.S. Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

AKC

## AFFIDAVIT FOR SEARCH WARRANT

I, Kelly E. Cain, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection and my duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following Priority Mail Parcel:

   a) Priority Mail Parcel #0307-3330-0000-0773-5157 addressed to "Cris Edwards 1002 balaye Vista Circle Apt. 304 Tampa Fl. 33619". The parcel has the return address information of "Linda Davis 1330 VanHouten Ave. Santee Cal. 90271".

3. I have been employed as a Postal Inspector since August 2006. From August 2006 through October 2006, I attended the Basic Postal Inspector Academy. Starting October 2006, I was assigned to the Prohibited Mailings Illegal Narcotics Team. Previous to that, I was employed with the San Diego County Sheriff's Department for approximately three and one-half years and with the San Diego State University Police Department for approximately six years. During that time, I was involved in several narcotics related investigations. I received training from the California Department of Justice Advanced Training Center on Drug Identification & Influence, the California Narcotic Officers Association on Drug Abuse Recognition, the Drug Enforcement Administration on Basic Narcotic Investigations and the U.S. Postal Inspection Service which included instruction regarding individuals using the U.S. Mails to transport controlled substances and

ABC

proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions.

4. Based upon my training, experience and discussions with other Postal Inspectors and agents I know the following in summary:

a. Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

c. Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

ABC

e. Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.
2. "Express Mail" is usually requested to be delivered by the next day's mail.
3. "Priority Mail" is usually requested to be delivered within two days of mailing.
4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.
5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.
6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.
7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

ABC

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i. I also know that drug related parcels containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor of controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

ABC

5. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

6. On 05-20-08, Postal Inspectors in San Diego, CA were notified by the El Cajon Post Office – Bostonia Station of a suspicious parcel. According to post office employees, the return address on the parcel was invalid. Inspector Tanael obtained the parcel from post office employees for further investigation. The parcel was Priority Mail Parcel #0307-3330-0000-0773-5157 addressed to "Cris Edwards 1002 balaye Vista Circle Apt. 304 Tampa Fl. 33619". The parcel has the return address information of "Linda Davis 1330 VanHouten Ave. Santee Cal. 90271." On 05-21-08, I received Priority Mail Parcel #0307-3330-0000-0773-5157 from Inspector Tanael. After examining the parcel, I became further suspicious of the subject parcel for the following reasons: The size, shape and appearance of the parcel was consistent with parcels previously identified in other investigations that contained controlled substances. I searched an address database system for the recipient address of "1002 balaye Vista Circle Apt. 304 Tampa Fl. 33619." The address appeared to be a valid address; however, the name "Cris Edwards" was not associated with that address.

7. On 05-21-08, Inspector Flores met with San Diego Police Department Detective Dan Billberry and his trained narcotic detection canine Cajun, at the United States Postal Inspection Service San Diego Field Office. Detective Billberry and Cajun conducted an exterior examination of the subject Priority Mail Parcel #0307-3330-0000-0773-5157. When Cajun examined the parcel described above, Detective Billberry told Inspector Flores that Cajun had alerted to the presence of the odor of controlled substances.

Inspector Flores then turned the parcel over to me and I secured the subject parcel pending an application for a search warrant. The qualifications of canine Cajun are contained in Attachment A.

8. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the Express Mail parcel as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Kelly E. Cain
Postal Inspector

Sworn to before me, and subscribed in my presence, on this
21st Day of May, 2008.

U. S. Magistrate Judge

ABC

**ATTACHMENT A**
**For**
**Daniel M. Billberry and K-9 Cajun**

Daniel M. Billberry is currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer. Det. Billberry has been a police officer for over 20 years and has worked as a narcotic detection dog handler since June 2005. Det. Billberry is a member of the California Narcotic Canine Association and the California Narcotics Officers Association.

Detective Billberry has participated in over 200 arrests of persons for violations of controlled substance laws. Det. Billberry has in excess of 250 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA Narcotic Investigator Course, the 40 hour DEA Clandestine Laboratory Investigator Course, the 40 hour Drug Trafficker Interdiction Characteristics Course, the 40 hour DEA Operation Jetway Investigator Course and the 40 hour SkyNarc Criminal Interdiction Course. Det. Billberry has testified as an expert in the field of narcotics in state court. Det. Billberry is familiar with the manner in which said substances are packaged, marketed and consumed. Detective Billberry has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor. Detective Billberry has worked in an undercover capacity in purchasing controlled substances.

ABC

From May 1999 to June 2005, Det. Billberry was assigned to the Narcotic Street Team. Det. Billberry was involved in over 200 cases either as the case agent or assisting detective. Detective Billberry has observed hundreds of persons involved in narcotic trafficking and has developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On June 4, 2005, Detective Billberry was assigned to the NTF Commercial Interdiction Team. Det. Billberry has been involved in over 100 parcel cases where he utilized surveillance techniques, profiles of persons and parcels and his narcotic detection canine. Det. Billberry has observed several hundred parcels during the course of his duties. On selected parcels, Det. Billberry has observed certain characteristics that although not illegal, when taken in their totality lead him to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment.

Det. Billberry has been able to confirm his suspicions by utilizing a narcotic detection canine to alert to packages. It has come to Det. Billberry's attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service and Federal Express security that the smugglers are utilizing extreme measures to shield the odor of the controlled substances from the canine.

ABC

In November 2007, Detective Billberry was assigned to train K9 "Cajun" in the area of narcotic detection. Detective Billberry and "Cajun" received approximately 20 hours of training and evaluation in the detection of marijuana, heroin, methamphetamine and cocaine from SDPD narcotic canine trainer Steve Sloan. Steve Sloan is a certifying official for the California Narcotic Canine Association. Prior to Det. Billberry being assigned "Cajun", "Cajun" was originally trained and certified by a United States Border Patrol designated trainer as a narcotic detection canine where he was deployed with a Border Patrol Canine handler for approximately one year. "Cajun" was donated to the San Diego Police Department in November 2007, after his handler was promoted. "Cajun" was assigned to work with San Diego Police Detective, Daniel Billberry on this date.

On December 20, 2007, "Cajun" was certified as 100% proficient in the detection of Heroin, Cocaine, Marijuana and Methamphetamine by Steve Sloan who is a certifying official for the California Narcotic Canine Association.

Cajun's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows.

Detective Billberry and "Cajun" have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled

ABC

substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Detective Billberry, a properly trained narcotic detection canine will not alert to all currency. Det. Billberry has witnessed searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been Detective Det. Billberry's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Det. Billberry's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

###

(12/21/07)

AO 93 (Rev. 5/85) Search Warrant

ABC

# United States District Court

FILED
08 MAY 22 PM 12: 03
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Southern DISTRICT OF California

NOT FOR PUBLIC VIEW

BY: DEPUTY

| In the Matter of the Search of | |
|---|---|
| (Name, address or brief description of person or property to be searched)<br>Priority Mail Parcel addressed to K&G Trucking 3653 Flakes Mill Rd. Suite F-113 Decatur, GA 30034. The parcel has the return address information of Gifts By Trish 4765 Home Ave. Suite #G San Diego, CA 92105. | **SEARCH WARRANT**<br><br>CASE NUMBER: '08 MJ1585 |

TO: Kelly E. Cain, Postal Inspector and any Authorized Officer of the United States

Affidavit(s) having been made before me by Kelly E. Cain who has reason to
Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)
Priority Mail Parcel addressed to K&G Trucking 3653 Flakes Mill Rd. Suite F-113 Decatur, GA 30034. The parcel has the return address information of Gifts By Trish 4765 Home Ave. Suite #G San Diego, CA 92105 which is in the custody of the U. S. Postal Inspection Service.

in the Southern District of California there is now concealed a certain person or property, namely (describe the person or property)

Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

I am satisfied that affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before 6/2/08
Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime – 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to ANTHONY J. BATTAGLIA
U. S. Judge or Magistrate

as required by law.

MAY 2 1 2008 9:40 am at San Diego, CA
Date and Time Issued City and State

ANTHONY J. BATTAGLIA
U.S. MAGISTRATE JUDGE U.S. Magistrate Judge
Name and Title of Judicial Officer

[signature]
Signature of Judicial Office

ABC

AO 109 (2/90) Seizure Warrant

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 5/21/08 | 5/21/08 AT 10:55 AM | UNITED STATES POSTAL SERVICE |

INVENTORY MADE IN THE PRESENCE OF

POSTAL INSPECTORS KELLY CAIN AND RICH TANAEL

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

PRIORITY MAIL PAREL WAS A BROWN CARDBOARD BOX CONTAINING 8,107.4grams OF MARIJUANA. THE MARIJUANA WAS WRAPPED IN MULTIPLE LAYERS OF PLASTIC WRAP, DUCT TAPE, AUTO GREASE AND DETERGENT. THE PARCEL CONTAINED PACKAGING PEANUTS AND CARDBOARD INSERTS.

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by the warrant.

Kelly E. C.

Subscribed, sworn to, and returned before me this date.

[signature] 5/22/08

U.S. Judge or Magistrate Date

NOT FOR PUBLIC VIEW

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

08 MAY 23 AM 10: 19

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**Building A, Unit 14**
**SD Storage**
**2776 Main Street**
**Chula Vista, California**

**APPLICATION AND AFFIDAVIT**

'08 MJ 1610

**FOR SEARCH WARRANT**

**CASE NUMBER:**

I, ICE SPECIAL AGENT GARRICK CARLTON being duly sworn depose and say:

I am a(n) SPECIAL AGENT WITH IMMIGRATION AND CUSTOMS ENFORCEMENT and have reason to believe that ___ on the person of or XXX on the property or premises known as (name, description and/or location)

**Building A is one of three tan buildings at SD Storage, located at 2776 Main Street, Chula Vista; Unit 14 is ground level unit in Building A that has a blue roll-up door with black numbers "14" above the roll-up door.**

in the SOUTHERN District of CALIFORNIA
there is now concealed a certain person or property, namely (describe the person or property)

Attachment A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Evidence of the commission of a criminal offense
concerning a violations of Title 21, United States Code, Sections 841(a)(1), 846

The facts to support a finding of Probable Cause are as follows:

Attached affidavit of ICE SPECIAL AGENT GARRICK CARLTON

Continued on the attached sheet and made a part thereof. ___ Yes ___ No

Signature of Affiant

Sworn to before me, and subscribed in my presence
5/21/08 at SD CA
Date City and State

ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

## ATTACHMENT A

1. Documents relating to or memorializing the distribution and transportation of marijuana, including U.S Currency, buyer lists, seller lists, pay-owe sheets, records of sales, log books, drug ledgers, storage records, such as storage locker receipts.

2. Documents and articles of property relating to the identity of persons owning, frequenting or controlling the storage unit to be searched, including keys, door locks, rental agreements and records, storage records.

3. Controlled Substances (marijuana); packaging materials.

4. Weapons and/or firearms.

## AFFIDAVIT IN SUPPORT OF APPLICATION OR SEARCH WARRANT

I, Garrick Carlton, being duly sworn, declare and state:

I

## BACKGROUND AND EXPERIENCE

1. I am a Special Agent of the United States Homeland Security, Immigration and Customs Enforcement (ICE), and have been so employed for six years. I am currently on the CARIT (Cargo Analysis Research Investigative Team). CARIT focuses on smuggling of narcotics by tractor-trailers through the Commercial Port of Entry at Otay Mesa. I have received formal training in illicit controlled substance investigations. I have had formal training and experience in controlled substances investigations; I have become familiar with the manner in which controlled substance investigations, including marijuana, are smuggled, transported, packaged, marketed, cultivated and consumed. I have received training in the identification of all types of controlled substances by sight and odor, including marijuana. I have participated and assisted in hundreds of arrests for controlled substances violations. In the course of my present duties, I have become familiar with the manners and techniques of traffickers in controlled substance as practiced locally,

2. In preparing this affidavit, I have conferred with other special agents and law enforcement officers, including Special Agents Manny Martinez and Jim Healey, who have experience conducting investigations. Furthermore, I have personal knowledge of the following facts or have been informed of them by others, including Special Agents Manny Martinez and Jim Healey.

II

## LOCATION TO BE SEARCHED

3. This affidavit is submitted solely for the purpose of establishing probable cause to search the storage unit at SD Storage, Building A, Unit 14, 2776 Main Street, Chula Vista, California (hereinafter "**Unit #14**"). This storage unit is further described as the following: Unit 14 is located in Building A at SD Storage, and has blue roll-up doors with black numbers "14" above the roll-up door.. Building A is one of three builds at SD Storage. Unit 14 is on the ground level.

4. This affidavit does not contain all of the information known to law enforcement regarding this investigation, but rather contains only those facts believed to be necessary to establish probable cause that evidence of marijuana cultivation and or money laundering will be found at Unit 14.

5. I submit that the facts contained in this affidavit demonstrate that there is probable cause to believe that evidence of violation of Title 21, United States Code, Sections 841(a)(1) & 846 (conspiracy to distribute and distribution of controlled substances) including items listed in Attachment B, will be found inside Unit 14.

III

**FACTS ESTABLISHING PROBABLE CAUSE**

**BACKGROUND OF INVESTIGATION**

6. On May 20, 2008, Eduardo Barreda drove a 2007 International Bobtail Truck (hereinafter "the Bobtail") in the United States at the Otay Mesa Commercial Port of Entry, claiming that he was transporting ceramic goods. Upon further inspection, officers at the Port learned there were several ceramic/plaster figurines and goods in the Bobtail. According to the x-ray of the Bobtail, some of the contents of these goods contained in the Bobtail appeared dense. Officers opened one of the ceramic figurines/goods and discovered marijuana inside. Later, Special Agents with ICE responded and Berreda indicated that he did not know that there was marijuana inside the Bobtail but that he was instructed by his employer/dispatcher at Camacho Trucking to transport the Bobtail through the Port to Camacho Trucking lot located in Otay Mesa. Agents then followed Barreda to Camacho Trucking. As the agents followed Barreda driving the Bobtail, agents noticed that a black Jeep SUV was conducting counter surveillance. The driver, identified as Evelyn Rodriguez Bravo, was later stopped by Chula Vista Police Department (Abelardo Ayala and Evelyn Rodriguez Bravo were registered owners of that black Jeep SUV). Agents also noticed a Mazda driving around. Agents arrived at Camacho Trucking and contacted the dispatcher. In their presence, the dispatcher called the owners of the ceramic/plaster goods in the Bobtail to inform him that the goods would be delivered to them at 9:00 a.m. the next day (Ernesto Anaya was listed on the manifest, but another individual "Jose Trinidad Lopez" contacted the dispatcher).

7. On May 21, 2008, the owners of the goods contained in the Bobtail called to see when

their goods were going to delivered to SD Storage. The dispatcher said that driver (Barreda) will be at their location around 9:00 a.m. Agents then followed Barreda to the SD Storage Lot, where Barreda was greeted by two Hispanic males at the SD Storage Lot. The Hispanic driver was driving the Mazda – the same Mazda observed by agents the night before. He was identified as Abelardo Ayala (hereinafter "Ayala"). The second Hispanic male ("UM-1") was driving a Black Nissan. They punched the code to access to the gated storage facility.

8. At that time, agents observed Ayala and UM-1 direct Barreda (driver of the Bobtail) to Building A, Unit 14. SD is located at 2776 Main Street, Chula Vista, California. Agents then observed Ayala drive away in his Mazda, but he returned a short time later with three other individuals. After arriving, they assisted in off-loading the entire contents (ceramic/plaster goods) of the Bobtail. After they completed off-loading the contents, Barreda drove the Bobtail away. (Agents subsequently verified that nothing was contained in the Bobtail after meeting with Barreda from Unit14).

9. Shortly thereafter, Ayala, the driver of the Mazda, took the three individuals (who assisted in off-loading the contents into the Unit 14) away from SD Storage. The driver of the Black Nissan Sentra (UM-1) stayed at the storage lot. Ayala returned to Unit 14 and stayed at the lot. At one point, the agents observed both of them leave together in the Mazda, but return approximately one-hour later. The driver (Ayala) dropped off his passenger and left the lot.

10. Agents maintained surveillance of Unit 14. Hours later, agents observed another a driver (subsequently identified as Raymundo Perez-Pogo – hereinafter "POGO") arrive in his blue Ford F-250 truck with a camper shell at Unit 14 in tandem with the driver of the Mazda (Ayala). Agents observed them open the roll up door to Unit 14 and observed them removed some of the contents (contents similar to the items transported by the Bobcat) and placed these items into the bed of the F-250.

11. Approximately 30 minutes later, the driver (POGO) of the blue Ford F-250 truck left the storage area and headed eastbound on Main Street. The driver appeared to be conducting what ICE

Agents considered "heat runs" to see if he was being followed. POGO then proceeded North on I-805 to I-5 north and exited at Via de la Valle and pulled into a gas station and through a shopping center to again identify any surveillance. POLO continued north on I-5 exited on Lomas Santa Fe and went eastbound to the 937 Lomas Santa Fe. POLO parked in front of the Ross department store walked away from the vehicle and was observed by ICE agents to be scanning the parking for counter surveillance. POLO walked into a Von's grocery store , exited immediately and was looking around the parking lot to identify any surveillance vehicles. POLO exited the store and was arrested behind the Ross department store by ICE agents. POLO was read his rights and signed a consent to search his vehicle. The subject also had the keys to the blue Ford F-250 truck in his possession. He confessed to knowing that he was transporting marijuana. Agents found several ceramic/plaster goods containing marijuana in POGO's Ford F-250 truck.

12. Based upon my experience and training, consultation with other law enforcement officers experienced in drug and financial investigations, and all the facts and opinions set forth in this affidavit, I know that:

a. Individuals involved in transporting and delivering marijuana will often maintain a storage location, like Unit 14, that contains controlled substances and/or packaging materials.

b.. Individuals involved in drug dealing and smuggling leave records and ledgers evidencing their trafficking activities in order to keep track of the storage, distribution and transportation of controlled substances.

c. Individuals also leave cash, buyer or seller lists, log books, drug ledgers, or other evidence in a storage location, like Unit 14.

//

13. Based upon the foregoing facts, the affiant has reason to believe that the items identified in Attachments B will be found in Unit 14.

GARRICK CARLTON
Special Agent ICE

Subscribed and sworn to before me this 21st day of May, 2008.

UNITED STATES MAGISTRATE JUDGE

# *UNITED STATES DISTRICT COURT*

SOUTHERN DISTRICT OF CALIFORNIA **NOT FOR PUBLIC VIEW**

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

## SEARCH WARRANT

**Building A, Unit 14**
**SD Storage**
**2776 Main Street**
**Chula Vista, California**

'08 MJ 1610

**CASE NUMBER:**

TO: ICE SPECIALAGENT GARRICK CARLTON and any Authorized Officer of the United States

Affidavit(s) having been made before me by AGENT CARLTON who has reason to believe that __ on the person of or xxx on the premises known as (name, description and/or location)

**Building A is one of three tan buildings at SD Storage, located at 2776 Main Street, Chula Vista; Unit 14 is ground level unit in Building A that has a blue roll-up door with black numbers "14" above the roll-up door.**

in the SOUTHERN District of CALIFORNIA there is now concealed a certain person or property, namely (describe the person or property)

See ATTACHMENT A

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before 6-2-08
Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at ~~any time in the day or night as I find reasonable cause has been established~~) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to BATTAGLIA
U.S. Judge or Magistrate
as required by law.

5/21/08 9:00pm at SD CA
Date and Time Issued City and State

ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

Signatre of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 5/21/08 | 5/21/08 9:05 pm | in storage unit |

INVENTORY MADE IN THE PRESENCE OF SA Carlton

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

No inventory taken or property.

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

[signature]

Subscribed, sworn to, and returned before me this date.

[signature] 5/22/08

U.S. Judge or Magistrate Date

## ATTACHMENT A

1. Documents relating to or memorializing the distribution and transportation of marijuana, including U.S Currency, buyer lists, seller lists, pay-owe sheets, records of sales, log books, drug ledgers, storage records, such as storage locker receipts.

2. Documents and articles of property relating to the identity of persons owning, frequenting or controlling the storage unit to be searched, including keys, door locks, rental agreements and records, storage records.

3. Controlled Substances (marijuana); packaging materials.

4. Weapons and/or firearms.